Good morning, please be seated. The second case on the call is 2-5-0-8-5-0-2-9-7. People v. Aguilar v. Huffman. Representing the appellants is Gregory L. Electra. And representing the people is Joseph Skelton. So, slightly... Oh, I'm sorry. I apologize. We'll get it straight. Thanks. Mr. Schmacher. Good morning. Let me say first I appreciate the court's courtesy and Karen accommodating me this morning and permitting me to argue from council table. No problem. We're still somewhat on the mend, but we're happy to be back. Well, we're happy to see you back. Good. The case this morning, Your Honor, involves a tragic gang murder that occurred on the 18th of May, 2001, where the two defendants in these separate dockets, who were cousins and also were nascent wannabe gang members of the Latin Kings, in order to be part of their 30-day trial basis, went out and fired their pistols at a car containing a Brian Lambert, resulting in Mr. Lambert's death. We have, in effect, two separate, somewhat again interrelated, but separate co-conspirator statements that the state seeks to introduce into evidence at the defendants' respective trials. In regard to the case 397, Hernando Aguilar, that involves statements that were made by co-defendant Julian Acosta to a Mr. Fuentes, who was a friend of his, that happened immediately after the shooting took place on the day of the incident. Basically, the trial court ruled that because those two statements were narrative in nature, that did not fall within the exception, and therefore could not and would not be permitted in the state's case in chief. As we have presented in our appellant's brief, Your Honor, we believe that the trial court was in error, and that indeed, following the meager case, that this was a situation where… Mr. Stilwell, if I can interject, as a threshold matter, what is your position on the standard of review? Okay, there you go. In regard to the standard of review, Your Honor, we have urged that the standard of review would be a de novo standard of review. Now, it has been raised whether the abuse of discretion standard of review should apply, and I believe we cited in our brief the Thorn cases. This was a situation where the evidence that was adduced at trial was striped out. The evidence that was adduced at the hearing consisted of the grand jury transcripts and the police reports in regard to these incidences, and that basically there were, in fact, no live witnesses. Therefore, the court was, in effect, just dealing with, you know, cold transcripts. Therefore, and Thorn basically says, since the court did not have to make a determination in regard to a discretionary determination in regard to the credibility of witnesses, the de novo standard of review would be appropriate. Doesn't the court have to weigh the totality of the circumstances? Doesn't it have to exercise some discretion in making the rulings? You don't believe it's an abuse of discretion standard? Well, in regard to this is where actually this ties into another part of our argument in Aguilar that the totality of the circumstances does come into it in regard to assessing the entire situation. But here, again, since we're not really dealing with a credibility determination where the witnesses were actually viewed, again, Thorn would hold it, again, de novo review would be appropriate in such a case. Now, as the court raises, though, again, we have here the situation that gets to the main thrust of our argument in regard to why the statements made by Mr. Acosta to Mr. Fuentes, his friend, should be admitted. That's your position with respect to the court's ruling that they were narrative? Okay, that's where I'm going, Your Honor. Basically, in effect, what we have here, and if we are looking merely at Thorn, nothing more, I would say these tend to be narrative statements. But if we look at the meager case, the meager case addresses that and, in effect, says that very often one of the problems with the co-conspirator exception is that the statements may take a narrative form. Here we have to kind of look at what was going on. We meet the other requirements in regard to the co-conspirator exception. For example, this is very, very close point in time of the shooting. But doesn't the meager case, isn't the police officer attempting, or aren't they attempting to persuade the officer to remain quiet about the crime? Basically saying, if you remain quiet, we'll do this for you. In this particular case, weren't they just describing the crime that had already occurred? Basically, again, if we take the statements in the context of what was going on and all that, this was, again, getting Fuentes to be aware of what was going on and why he would need to cooperate as he did in regard to their concealing this case. This is a conspiracy that, again, if we take everything in its whole context, and this is where this overall review. But if we take it all in the big context of the de novo review, aren't we? The court could consider de novo review in this sense because here you're dealing with transcripts and statements, and this is something, of course, this court has addressed in other cases recently where in effect they can read something as clearly as the trial court did. That you could apply de novo review. But tell me where in the statement, Aguilar, it describes how they are attempting to conceal the crime. Okay, again, Your Honor, this basically, if we go to the police report and the grand jury testimony, basically what occurred was that Acosta talking to Fuentes. Again, we have to try to, sometimes the similarity of the names can get a bit confusing. But basically, Acosta talking to Fuentes is basically, in effect, saying what happened and basically is also saying the gun's been thrown away, things of this nature. So here, again, we get toward the elements of concealment. This is all rolling together in one big ball, if you will. It's all together. It's not like, and I, again, invite the court's attention to Meagher. But Meagher makes the comment in regard to one of its cases that it was reviewing that here's something nearly related that we should shot the guy to a stranger. See, this is a concern. This is, if, in effect, I come in here off the screen and say, Justice O'Malley, I just ran over your bailiff, you know, and with nothing more, that, again, is just a cold statement. But here, I'm not inviting Justice O'Malley to enter in any sort of conspiracy with me to, in effect, hide this fact. But here's what's troublesome. It appears that Acosta's statements, when you think about it, describe events or crimes that have already been committed. Where in this narrative is the invitation to Fuentes to help conceal the conspiracy or further the conspiracy other than describing things that have already happened? Where is the invitation that you're talking about? Okay. Again, Your Honor, this is why I'm saying the flow of what has transpired becomes so vitally important. Because, again, if we're just looking at the form, I cannot dispute that it's narrative in form. But in the way the thing comes together, it basically shows that it is a furtherance of the conspiracy. It's more by implication. But I would respectfully submit that with the tenor of what Meeger was trying to hold in regard to something that's furthering the conspiracy, that there's a reasonable implication that may, in effect, allow these statements to come in. They're just not merely describing what occurred. But, in effect, here we have... I'm sorry, Your Honor. I want to make sure I understand. I think you're... Are you suggesting that these statements were efforts... Is Mr. Fuentes now a co-conspirator? I would say in terms of... I would say in terms in regard of hiding the gun, things of this nature, he could be so implicated. Well, it strikes me that the state's position has to be that these were efforts to get Fuentes to become a part of the conspiracy, albeit after the murder had occurred, that they wanted him to do it. That would be crucial to your part of this. The second question I had for you is when they say things like they tell Fuentes that they were being chased by the cops and they tell Fuentes that they ran in a different direction after the shooting, different directions, those describe efforts to conceal what they did. But the statement themselves telling Fuentes that doesn't involve concealment. They're describing past efforts to conceal. Don't the statements themselves at issue have to be in fact themselves efforts to conceal as opposed to saying things that were efforts to conceal? Do you understand the distinction I'm drawing there? I see what you're saying, Your Honor. And, again, I can't argue with you in regard to their form. But, again, this is what is very troubling about this case and, again, why we, you know, turn again to meter that with the overall, if we just go to the form of the statement and look at nothing more, they're narrow. I can't deny that. But if we're taking these statements in the context of what they're being said, where they're, in effect, describing the things. Well, counsel, that's what I'm saying. The context, it seems to me, you're telling us the context is an effort to get Fuentes to help them keep this secret, which that's why I asked my initial question. Are they attempting to get Fuentes to become a co-conspirator? And I believe that they certainly are seeking to have him, in effect, cooperate with them. Okay. So when they tell him that they did this crime and they tell him steps they took to conceal it, such as running in different directions, how is that asking him to help them continue to conceal it? Well, again, basically, again, here, we have to, again, get to the statements in regard to the gun and then also the events that, again, are tied together. Well, I mean, one of the statements is that they tell Fuentes they threw the gun in Fuentes' yard, right? Yes. Okay. So if the statement was clear and they said to Fuentes, hey, we threw a gun in your yard, don't tell anybody about it, that'd be a slam dunk for you guys to get in, I think. But also, then, Your Honor, as the facts also relate, that ultimately, when he's assisted in disposing of the gun, which, in effect, goes and shows, in effect, that he did, they did succeed in getting his cooperation, as the lower court has inquired. As I said, this is, again, I guess where you get into the question of form, to some degree, form versus substance. The statements are in a narrative form, but the question becomes, is the mere fact that they are in a narrative form, in and of itself, just by itself, sufficient to keep these statements out? Let me ask you this. Even if you can't get these statements in, you could still get in the fact that Fuentes helped them dispose of the gun, correct? I believe that the State may be able to do that trial. So this case, and I need to keep drawing the distinction that I see, and I could be wrong, but in the Meeking case, you have the police chief, so he was in a position of authority over this police officer, that he basically promised him, listen, we won't have you prosecuted for the beating if you keep quiet, basically. So it was a little more blatant in the Meeking case than it is in the case before us. Don't you agree? I would agree that Meeker was a stronger case, but again, they were dealing with the, primarily with the principal in regard, is this furthering the conspiracy? And we would respectfully submit that that is exactly what was occurring here, and that basically taking everything into full context, that these admittedly, in narrative form statements, but still within the context, should be admissible. Mr. Zobacki, I could ask you a lot of questions, but before you end your argument, could you, in the time that you have, address Aguilar's statements against Acosta? I don't think you've got it. I'm sorry? Can you address Aguilar's statements against Acosta? I don't think you got to that part of it. Okay. Basically, in regard to the Aguilar statements here, again, my opponent has very forthrightly conceded the main thrust of the argument we raised in our original appellate spree, in regard to the trial judge erred, in regard to holding absolute silence. So the main thrust of their brief in opposition was that, well, you can still affirm, because there's a question in regard to the transcript and the police reports, whether this was the same conversation. I would respectfully submit that, again, a very reasonable inference was drawn by the trial court that, again, this related, and if, again, you read, as I remember, reviewing the grand jury testimony, as well as reviewing those sections of the police report that were admitted, that basically is a very, it seemed to me, when I was reviewing it, it seemed like it, again, very clearly related to the same conversation. The question that my opponent then raised, and I believe we addressed in our reply brief, is that we, in effect, failed to sustain our burden. Again, I believe that, first, we did sustain the burden. Second, there's no requirement that, in effect, it had to be live testimony. But that, if, indeed, there is any question about this, that, in effect, we suggest in our arguments that this court could take a limited remand, in effect, in practical fact, have the, if need be, gentleman get on the stand before the trial court and clarify that point. I don't believe that's truly necessary, but that that could be done. And in the interest of justice, that would then clarify that point. But as far as your name, I'm sorry. You're seeking to have it admitted under the admission by silence, correct? That's the theory. You're seeking to have this admitted under the doctrine of admission by silence, correct? That was basically, well, that's one of the main thrusts of the, one of the thrusts was he was silent, but also we have to remember that Aguirre said that both they, both defendants, were talking. So, again, this is where Judge Wegner had a lot of trouble, because in regard to strict silence. Well, did he, did Wegner address whether Natacasta heard the statements? Did he specifically address the issue of whether Natacasta heard the statements at issue? Did he address that? I believe, I believe, I believe he did. I believe that he, in effect, again, in his ruling that this was the, again, the same, again, the same conversation. Well, wouldn't he have to make that determination? How would it come in under the doctrine of admission by silence unless there's some finding that Natacasta heard the statement? I mean, you can't admit something against someone if they didn't hear it, can you? Admission by silence presupposes that they heard the statement, right? Correct, Your Honor. And, again, as I said, I think a fair reading of the materials that were submitted that Judge Wegner drew a completely proper inference in regard to that this was the same conversation. And this is why we got into this gang, reasonable gang member exception, because if he had, you know, if he had not heard it, that wouldn't have come in at all whatsoever. So, again, Judge, you know, again, Judge Wegner made a, again, based on the materials submitted, the, I think, reasonable inference that, again, this was the same conversation. But if, again, there is a question about this, I will respectfully submit that this can easily be clarified by this Court issuing a limited remand and, in effect, allowing that to be clarified. So that way, then, this, in practical effect, then we can totally, totally resolve this before the matter comes to trial and we can truly address the justice of the merits in regard to raising, whether these co-conspirator statements may be raised in the case, in the state's case in chief at the trial level, which, of course, is yet to occur. All right, Counselor, obviously, you're aware you'll have time for rebuttal, so Ms. Skelley, please. Good morning, Your Honors, Counsel. May it please the Court? Buttons are making some noise here. Judge Wegner, in both of these cases, properly ruled as he did. With respect to, there's actually two separate issues. The first issue in Mr. Aguilar's case involves the co-conspirator exception, and the exception involved in Mr. Acosta's case is implied or tacit admissions. With respect, I'd like to address the standard of review, and I believe that it's very well established that typically a judge's rulings on evidentiary issues are addressed under abuse of discretion standard. And, in fact, one thing I would point out about the Meeker case, in that case, that was a case where the trial judge had originally admitted the statements of the chief of police as co-conspirator statements. We have a case here where Judge Wegner has determined that the statements in Mr. Aguilar's case were inadmissible. And, again, we may actually have an argument as the defense that maybe none of those statements should have been admitted, but it was a very narrow ruling by Judge Wegner in Mr. Aguilar's case. He did, in fact, allow some statements in that Mr. Acosta had allegedly made to Mr. Fuentes. And it was just the portion of the statement relating to what had occurred at the time of the shooting that Judge Wegner found were not admissible. Well, counsel, you touched on something that I was getting at before, and this is my difficulty, I guess, with the case. The distinction that the trial judge drew between the statements I'm not getting. I understand the distinction seems to me that he's drawing a line between statements we shot him and statements we ran away, because running away is concealment. But my understanding is that I don't get that distinction for these purposes, because a statement about in the past we ran away, that statement itself is not an effort to conceal. And if I'm correct in my analysis of this, and it would be a legal issue that we might actually look at de novo, is that the statement has to be in furtherance of the conspiracy. The statement itself. And describing that somebody tried to conceal something in the past, unless, as I point out through a point, they're trying to entice Fuentes to become a co-conspirator. Anyway, my point is I don't get the distinction the trial judge is drawing, which leads to your point is maybe you kind of surprised me. You said the trial judge ruled correctly, but then you said that maybe he didn't. Well, he certainly ruled correctly in the portion that he kept out. And it's not the time for you to appeal. Yes, and unfortunately, right. Unfortunately, we don't have the option at this point, because we can't appeal. Okay. Then I guess you're not prepared to tell me I'm wrong, and your point is mainly to see the trial court's distinction, then. Well, we certainly believe that the statements that were excluded were not in furtherance of and during the course of the conspiracy. It had nothing to do with any request for concealment or. What statements exactly were excluded? That I prepped up, we prepped up on Lambert, who was getting into a car, and then we shot. We shot at the car, and I believe maybe something about shots being fired back. That, I think, was just the essence of what was excluded by Judge Wagner. Your opponent talks about excluding you through the gun in your yard. No, that was not excluded. In fact, I believe the gun, in fact, might have been recovered by the police, so it certainly wasn't anything that could have been concealed by anyone. Meagher, I think Meagher, what it shows is that that's a situation where the chief of police, who's the co-conspirator whose statements are being admitted, that's a situation where, in fact, the chief of police is trying to curry this witness's silence, and I think, in effect, trying to make him a co-conspirator. There was a case cited by the state in the trial court, the McInnes case, and I'm sorry I don't have the site for you, but it is in the record, and that was a case where there was a home invasion and a murder, and the next morning, one of the defendants in that case went to a third party, told that party what happened, gave that person goods from the home invasion, and said, please take this, I don't want it. So basically asked that third person to conceal some things from the offense. There is no request for any concealment here, and the state's position seems to be that essentially that by disclosing the offense, it's concealing it, which I think is just very logically... There's an argument that it's an attempt to further the conspiracy by implication. What is your position with regard to that, the implication argument, which seems to be sort of an extension of the existing law, but what's your reaction to that? I guess I'm not quite sure how you can ask for concealment by implication and how you can, by narrative statements, conceal anything. It seems to me that it's contrary to the very purpose of seeking concealment, to disclose in narrative form what happened. According to what Mr. Fuentes said, Mr. Acosta didn't even ask that he conceal Mr. Acosta. He just told him what happened. He didn't ask him to take any of his clothing. He dropped him off somewhere. I don't think even Mr. Fuentes was the driver of the other car, but they dropped him off in a location somewhere nearby. So he was not invited to do anything? No. They told Acosta that they told Fuentes that they were being chased by the cops. Mr. Acosta was the speaker in this one. And the judge allowed that. Correct. Acosta said that he and Angela ran in different directions after the shootings, and the judge allowed that. Right. And then Acosta said they tossed the gun in Fuentes' driveway, and the judge let that in. Correct. And then they said that Acosta had taken a shower, changed his clothes because of the gunpowder residue, and he let that in. Correct. So the only things that he didn't let in was that they crept up on Lambert and they shot at the car. Correct. And possibly that someone shot back at them. But, yes, that was it. And, as I said, unfortunately at this stage, we can't dispute the judge's rulings on the other matters, but we certainly can take the position, which we do, that the portion that was omitted was properly omitted. Let's go on. I'm sorry, I don't mean to take over, but let's go on to the issue with respect to the silence. Excuse me, I want to just, before we go there, I do want to ask. Now, again, this conversation, you said Fuentes wasn't asked to do anything. So remind me again, when did this conversation with Fuentes happen again? It's maybe an hour or so after the shooting had taken place, I believe. And the one fellow has already taken a shower? Yeah, in fact, my understanding is that Fuentes' testimony, which I believe is from the grand jury transcript, is that he's told that Mr. Acosta is at his home waiting. So, actually, everything. He's told that Mr. Acosta is at Mr. Fuentes' home? Right, waiting for him. And by the time they have this conversation, the police have already recovered the gun that was thrown into Fuentes' yard? I'm not sure. I know the police were in the area at the time and I believe even heard the shot. So they were on the scene very quickly. Well, here's what I'm getting at. Is it possible for the state to be able to construe this as a conversation, telling Fuentes, we threw the gun in your yard. We're telling you we threw it there. We don't want you to tell the police. So keep it a secret that the gun's in your yard. That would be seemingly a statement made to, if it's made in the presence of asking Fuentes to be a co-conspirator or whatever, that they'd have an argument to get in. And then the other statements would be admissible. This is their argument, to put that all into context. You know, well, why did you throw a gun in the yard? Well, because we did this and did that. But you're saying that didn't happen or whatever. I don't know. There's certainly no evidence that Acosta asked Mr. Fuentes to do anything. Or to refrain from doing anything about this gun that's in his yard or whatever. No, no. There's no evidence at all about that. So I just don't think a reasonable person would interpret it in that manner. But I'm telling you this and, I mean, that's not a co-conspirator statement. If he's not furthering, I think you have to look at what the individual making the statement was doing to see if he was furthering the conspiracy. And if he's just recounting what they did. Well, I agree with that part. I told you before, I agree that describing past efforts to conceal are not efforts to conceal themselves, necessarily. Okay. I'm sorry. I'm going to go back to where you were there. If we can just go back for a second. Sure. On a Mr. Acosta. A Mr. Acosta. Okay. I'm sorry. Did you, you had a question or you just want me to address it? No, I just wanted to go to the address next. All right. Sure. With respect to Mr. Acosta, now that involves statements that Mr. Aguilar allegedly made to Jose Aguirre the day after the shooting. And the one thing that's somewhat interesting, I think basically what happened in this motion and litigating this motion before the trial judge. First of all, the initial motion had only a police report attached to it. That police report consisted of a statement that Mr. Aguirre made to the police about a year after the shooting. And it indicates nothing about Mr. Acosta. It doesn't mention him at all. It's entirely a narrative of Mr. Aguirre saying this is what I was told by Mr. Aguilar. In fact, I can, trial counsel, defense counsel pointed that out in the trial court. There's no indication that Mr. Acosta's present during this conversation, let alone that he heard it or reacted to it. The second part of the record that the state produced, and I think it was produced maybe at the hearing itself but not submitted with the original motion, was a grand jury transcript from Mr. Aguirre's grand jury testimony about six years after the shooting. And in that transcript, Mr. Aguirre makes very vague, nonspecific statements that they said this and they said that. There's only one particular occasion where the prosecutor at the grand jury hearing says, when you say they, did Mr. Aguilar say it? Did Mr. Acosta say it? Did they both say it? And he says they both said it. And that was with respect to, I think, they shot into the crowd. So to the extent that this is allegedly a statement made by the defendant himself, it certainly is admissible as an admission by that defendant. There is no issue about implied admissions or tacit admissions. The problem with the remaining portions of the grand jury transcript is that he never, in that transcript, identifies not only who particularly said what, but what the other defendant's reaction was. It's not really clear if the police reports and the grand jury transcripts refer to the same conversation between Aguilar and Acosta. Is that part of what you're saying? It certainly doesn't seem to be because the police report is so completely limited to one person. What's your position with respect to counsel's suggestion that it be remanded for a hearing? Well, I think the state already had two opportunities to present this properly. The proper thing, I believe, would have been to have Mr. Aguirre there to lay the, in effect, this is kind of a de novo issue. If the state did not lay the proper foundation for admission of a co-defendant statement as an admission against this particular defendant, they could have called Mr. Aguirre as a witness to explain who said what, was it within the other person's hearing, and what was the other person's reaction. And he was present. Correct. Correct, whether he heard it and whether he responded to it. So the appeal is now before us, and there seems to be an issue of whether or not the trial court properly addressed some of the elements that would determine admissibility, i.e., whether or not the defendant heard the statement, which is a prerequisite. If there's no showing that the defendant to who the statement is being attributed actually heard it, it's a foundational problem. So why wouldn't we remand it? Because the state had the opportunity to present that evidence not only once but twice, filed a motion to reconsider, asking Judge Wegner to reconsider his ruling with respect to the reasonable gang member and whether or not Mr. Acosta remained silent. But they still did not present any evidence in any kind of affidavit or offer of proof as to what the testimony would be. On what specific legal basis would we not remand it, that there was a waiver, there was some type of a forfeiture? On what basis? The state did not meet its burden of showing that the statements they were seeking to admit from Mr. Aguirre qualified as implied or tacit admissions by Mr. Acosta. And on that basis, I would say that there certainly shouldn't be a third opportunity for the state to come in and present a foundation that it failed to present the first time, two times around. So our position, again, is that Judge Wegner was correct to the extent that he excluded certain evidence that allegedly was made by Mr. Acosta, that that was correct. It was simply a narrative. It wasn't an attempt to conceal anything. So it did not qualify as a co-conspirator statement. And with respect to Mr. Acosta, that the state failed to lay the proper foundation to admit that statement as an implied admission. Thank you. Thank you. Mr. Sobaczek, the medal, please. Thank you, Your Honor. Very briefly, just for point of clarification, in case I may have misspoken and I referenced my brief that, again, I agree with counsel that the statements that were kept out in the Aguilar case were very limited. Were only those two statements. The two statements that basically they did let in some additional statements. So if I may have misspoken in regard to tossing the gun or something, that was a misstatement on my part. That was admitted. And, again, as we point out in our brief, we had no dispute with any of Judge Wegener's other rulings except for the exclusion of those two statements. In regard to the- Counsel, before you, I'm trying to ask you the same question I directly asked. I'm not grasping the distinction that Trial Judge drew here. I'm not grasping the distinction that Trial Judge drew between these statements, significance of it anyway. He seems to have allowed in statements that described efforts to conceal and then excluded statements that were just direct statements of what occurred, the crime. And I'm not getting the distinction for purposes here. I mean, it sounds to me like suppose what we had is a guy say, we shot him. We were wearing masks when we shot him. Under this, as I understand it, trial judges, if I understand the trial judge's rationale would be he let in the statement we wore masks but not the statement we shot him. And I'm not getting the point there. Well, again, what the trial judge- And this is, again, this ties in with our point why all of these statements should come in is that basically, again, we're dealing with the entire context of this and that basically these were descriptive in regard to concealment to further this conspiracy between these two men that had, in effect, the two cousins crept up, shot the victim, and had taken these various steps. So, again, this is why we get into our entire context scenario because- But that's not- I'm having the opposite view. I mean, my point isn't really that some of them- maybe none of them come in. I mean, I just don't see the distinction. You're saying, look, if they're allowed to bring in the fact that they took evasive action in order to understand that, put it in context, bring in these other statements that the judge excluded. And my point is the fact that they took evasive action is not- that statement is not an effort to conceal as I see it. I'm not- that's my point. Well, they're taking the evasive action, Your Honor, respectfully, is that, again, this is showing concealment. No question about it that what they did when they ran in different directions and tried to hide, that was an effort to conceal. But telling somebody you tried to conceal something in the past is that- that doesn't make that particular statement you're making at that moment a further effort to conceal. That's my difficulty. I mean, you're describing past efforts to conceal. That doesn't mean the statement of describing past efforts to conceal isn't itself an effort to conceal. Again, Your Honor, here we have the situation, too, in regard to- and I think it's important to remember the context of the closest and point in time that these statements were made. This isn't something where somebody a day later or even 12 hours later says something. This is something really, in effect, I- maybe this isn't a completely good analogy. It's the one that comes to mind. It's almost, in a way, kind of like a hot pursuit type situation. That basically here you have, in effect, this heat of event, this shooting has just taken place. This guy has gone to his friend's house to, in effect, say, you know, here's what's going on. You know, help us. And taking it into that context, this then shows that this is part of, again, a furtherance of concealing it, and this is why these statements should be permitted into evidence. Mr. Slovacik, with regard to the issue of remand, Ms. Kellnick has made the argument that the State has already had two bites of the apple in an attempt to lay the foundation for the admissibility of the admission by silence document. She argues there's no compelling reason to remand it for a third hearing. The State has already had the opportunity twice to lay the foundation. What is your response to that? Well, Your Honor, thank you. You actually anticipate me a little bit. Basically, in that regard, we have, again, the judge properly having reviewed these transcripts, drawing a proper inference, and therefore the State was entitled to rely, in effect, on his making that evidence based on these transcripts. Here this now has been raised in regard that they didn't submit something that the court needed. The court didn't indicate that it needed this. In practical effect, it's saying, okay, State, now you relied on the judge's inference based on these transcripts, but now here we have a supposed deficiency based on these cold transcripts. In effect, that's really kind of sandbagging the State. Wasn't it the State's burden at that time to put on the evidence that was appropriate to meet their burden? I'm sorry, Your Honor? Wasn't it the State's burden at that time to put on sufficient evidence to meet their burden? And, again, Your Honor, the State can put evidence in by documentation. It doesn't have to be live witnesses. And it satisfied the trial court, and the trial court made its ruling in inference from that. The trial court was satisfied and was able to draw those inferences. Now that this is belatedly raised that this was insufficient, after admitting, in effect, the thrust of our main argument raised in our original brief, basically then what? Who said it was insufficient? I'm sorry, Your Honor? Who said it was insufficient? Who said it was insufficient? You said now it's been raised that it was insufficient. Who said it was insufficient? No, Your Honor, I'm sorry. What I said was in regard to our position, not insufficient. But basically, Your Honor, what I'm saying is that nothing was raised below about, in effect, the evidence being insufficient. This was raised for the first time here on this appeal in the defendant's response that there was an insufficiency. But the court in making their ruling did not term that the evidence was insufficient, did they? The trial court basically viewed the evidence as sufficient in regard to being able to make its ruling and draw its inferences. Therefore, what we're saying is that if this court is concerned with this point that's been belatedly raised, then in the interest of justice, what should be done is allow this court to go, allow this case to go back to the trial court and clarify this point. I suppose it's possible that when that comes in, that it could be shown that the police reports and the grand jury transcript might not have been the same. But I would respectfully submit it would probably clarify that, in effect, the grand jury testimony was relating to the police reports from many years ago from an ongoing investigation. It was going on for six years before the indictments could be returned. Again, we have to remember that scope of time that this investigation was ongoing. And therefore, that point could be very easily clarified. And, in effect, then, if that point is clarified, as I believe it would be, then, in effect, with the defendant's concession, at least in regard to that case, in regard to Costa, basically, then this statement should come in. Thank you. All right, well, thank you both for your arguments.